*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0299P (6th Cir.)
File Name: 03a0299p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

HELEN JONES,
    *Plaintiff-Appellant,*

    *v.*
                     No. 01-2335

CITY OF MONROE, MICHIGAN,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71472—John Corbett O'Meara, District Judge.

Argued: October 17, 2002

Decided and Filed: August 21, 2003

Before: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** J. Mark Finnegan, HEBERLE & FINNEGAN, Ann Arbor, Michigan, for Appellant. Robert D. Goldstein, GARAN, LUCOW, MILLER, SEWARD, COOPER & BECKER, Grand Blanc, Michigan, for Appellee.

1

**ON BRIEF:** J. Mark Finnegan, HEBERLE & FINNEGAN, Ann Arbor, Michigan, David F. Grenn, Monroe, Michigan, for Appellant. Robert D. Goldstein, GARAN, LUCOW, MILLER, SEWARD, COOPER & BECKER, Grand Blanc, Michigan, Thomas R. Paxton, GARAN, LUCOW, MILLER, SEWARD, COOPER & BECKER, Detroit, Michigan, for Appellee.

GIBBONS, J., delivered the opinion of the court, in which BATCHELDER, J., joined. COLE, J. (pp. 15-32), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant Helen Jones, who has multiple sclerosis, brought suit alleging that the municipal parking program of the City of Monroe, Michigan ("Monroe") violates Title II of the Americans With Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973. Jones filed a motion for a preliminary injunction requesting that the district court order Monroe to modify its parking program to grant Jones free all-day parking adjacent to her place of employment. Specifically, Jones asked that the district court order Monroe to reserve a free parking space for Jones adjacent to her office or to cease ticketing Jones when she parks in a designated one-hour parking space for the entire work day. The district court denied Jones's motion for a preliminary injunction on the ground that she failed to establish a likelihood of success on the merits. Jones appeals this order. For the reasons set forth below, we affirm the district court's denial of a preliminary injunction.

## I.

Jones suffers from multiple sclerosis, an incurable, usually progressive disease. Her disability affects her sight, balance and ability to walk. Jones customarily uses a wheelchair, although on occasion she walks for short distances with the use of a cane. Jones is employed by the Salvation Army Harbor Light ("Salvation Army") as a substance abuse counselor for deaf and hard-of-hearing clients. The Salvation Army is located in downtown Monroe.

Because the building which houses the Salvation Army's offices lacks private parking spaces, Jones must either park in a space provided by Monroe or in a private commercial parking area. Monroe has several parking areas that provide free parking in the downtown vicinity. One such parking area is immediately adjacent to the downtown Monroe business district as well as Jones's office. These free parking spaces, however, are each limited to one-hour parking only. Several parking spaces designated for disabled users are located in this one-hour parking area. These spaces are similarly limited to one-hour parking. Monroe also provides free all-day parking in several lots located within two blocks of Jones's office. According to Jones, she is not able to walk from any of these free all-day parking lots to her office due to her disability.

On numerous occasions Jones has parked her car in a one-hour parking space adjacent to her office for the duration of a work day. Monroe has issued Jones dozens of parking tickets based on her violations of the one-hour time limitation. Jones displays a handicapped parking permit on her vehicle, but Monroe contends that the permit does not allow her to violate the one-hour time limitation.

On April 16, 2001, Jones brought suit alleging that Monroe's refusal to modify its municipal parking program constitutes unlawful and intentional discrimination on the

basis of disability in violation of federal law.[1] In conjunction with filing her complaint, Jones sought a preliminary injunction. On June 15, 2001, the district court held a hearing on Jones's motion for a preliminary injunction. On August 28, 2001, the district court denied Jones's motion for a preliminary injunction on the basis that Jones had failed to establish a likelihood of success on the merits of her claim.

This timely appeal followed.

## II.

On appeal, Jones argues that the district court erred in refusing to enjoin Monroe's allegedly discriminatory parking policies and require that Monroe cease ticketing Jones when she parks in a designated one-hour parking space or provide Jones with a free all-day parking space adjacent to her office pending a final resolution on the merits. This court reviews a lower court's decision on whether to grant a preliminary injunction for an abuse of discretion. *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003); *In re DeLorean Motor Co. v. DeLorean*, 755 F.2d 1223, 1228 (6th Cir. 1985). The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). Under this standard, we must review the district court's legal conclusions *de novo* and its factual findings for clear error. *Taubman*, 319 F.3d at 774.

---

[1] The original complaint contained three counts. Count one sought individual relief for Jones relating to Monroe's failure to modify its downtown parking program to allow Jones to participate. Counts two and three related to class-wide claims under federal law and Michigan law respectively. Counts two and three of the original complaint were abandoned in an amended complaint filed by Jones on November 27, 2001. Count one remains.

When considering a motion for preliminary injunction, the district court should consider four factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Nightclubs, Inc., 202 F.3d at 888.* The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *DeLorean*, 755 F.2d at 1228. Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue. *Id.*; *Mascio v. Public Employees Retirement Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998) (affirming the district court's grant of a preliminary injunction based on the district court's conclusion that the plaintiff had demonstrated a substantial likelihood of success on the merits).

Jones argues that the district court erred in finding that Monroe's parking program complies with federal law and thereby concluding that Jones had failed to establish a likelihood of success on the merits of her claim.[2] Jones further claims that the district court erred in failing to address

---

[2] Jones also argues that the district court's order fails to comply with the requirements of Rule 52 of the Federal Rules of Civil Procedure. Despite the somewhat cursory nature of the district court's legal analysis, we find that the district court's order complies with the requirements of Rule 52. Moreover, the district court's opinion is adequate to allow this court to review the denial of the preliminary injunction. Even if this court concluded that the district court's findings of fact and conclusions of law are inadequate under Rule 52, it would be unnecessary to remand the case because the record is exceptionally clear. *See Urbain v. Knapp Bro. Mfg. Co.*, 217 F.2d 810, 816 (6th Cir. 1954); *see also Davis v. New York City Hous. Auth.*, 166 F.3d 432, 436 (2d Cir. 1999); *White v. Carlucci*, 862 F.2d 1209, 1211 fn. 1 (5th Cir.1989)). In addition, both parties agree that the record is complete and that this court can address the issue of the injunction without remand for further proceedings.

Monroe's alleged discrimination in refusing to provide Jones with "meaningful access" to the parking program and refusing to grant her a reasonable accommodation.

Jones alleges that Monroe's parking program violates Title II of the ADA,[3] which provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 12131 defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. The ADA's prohibition of discrimination in services, programs, or activities "encompasses virtually everything a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). To make out a *prima facie* case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *See Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998); *see also Burns v. City of Columbus*, 91 F.3d 836, 841 (6th Cir. 1996) (setting forth the *prima facie* case under the Rehabilitation Act); *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995) (finding that in order to establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is

---

[3] For purposes of this case, there are no relevant differences between Title II of the ADA and Section 504 of the Rehabilitation Act. Therefore, a separate analysis of Jones's Section 504 claim is unnecessary. *See McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459, 460 (6th Cir.1997) (*en banc*).

otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability).

The district court did not address whether Jones is disabled or whether she was otherwise qualified for the benefit in question. Instead, the district court concluded that Monroe is not excluding Jones from participating in or denying her the benefits of the parking system. In evaluating the correctness of this conclusion, we must first examine the nature of the benefit offered by Monroe.[4] Initially, we note that the benefit is not appropriately defined as free downtown parking generally, but rather as the provision of all-day and one-hour parking in specific locations. *See Alexander v. Choate*, 469 U.S. 287, 303 (1985) (holding that "adequate health care" was too "amorphous" a concept to define the government service or benefit to which disabled persons may assert a statutory right of access and accommodation).

In the one-hour parking area specifically addressed by Jones, Monroe is offering the benefit of free short-term parking to individuals who wish to transact retail or other business in the downtown business district. The short-term, one-hour nature of the benefit is designed to help downtown businesses by making parking spaces in close proximity to them more readily available. Monroe quite logically has determined that downtown shopping and other downtown business activities are discouraged when patrons cannot easily obtain parking places close to their destination. All-day

---

[4]We decline to reach any conclusions regarding whether Jones has a disability and whether she is otherwise qualified. Instead, we assume for the sake of this opinion that she meets the first two elements of her *prima facie* case and address only the third element: whether she was excluded from participation in or denied a benefit on the basis of her disability. *See Henrietta D. v. Bloomberg*, Nos. 02-7022/7074, 2003 WL 21308851, at 13-14 (2d Cir. June 9, 2003) (noting that "[a]n ADA plaintiff must demonstrate that a denial of benefits occurs 'by reason of . . . disability.'" (quotation omitted)).

parking in the current one-hour spaces would thus have a negative impact on downtown businesses.

In specific locations a short distance away from the one-hour parking, Monroe has also provided the benefit of free long-term, all-day parking to all individuals who come downtown, for whatever reason. While the all-day parking is not provided for the specific benefit of individuals who work downtown, they are free to use it.

Access to the one-hour and all-day parking places is facially neutral. The one-hour limit applies to individuals with disabilities and those without disabilities. Similarly, both disabled and able-bodied persons may park in all-day parking. Both one-hour and all-day parking areas have spaces for disabled and nondisabled individuals.[5] The parking limitations do not affect disabled and nondisabled individuals

---

[5]Jones argues on appeal that she lacks meaningful access to the free all-day parking spaces because the spaces for the disabled are not in compliance with the ADA minimum construction and design standards. These standards address issues such as proper signage, width of parking spaces, and slope of parking spaces. Jones's claim of denial of a benefit, however, does not arise from any design and construction flaws in the all-day parking, because Jones admits that she would not use any of the free all-day parking spaces regardless of the alleged design flaws due to the distance of the parking spaces from her place of employment. The district court's opinion is limited to Jones's request, for herself only, that the court "force the City of Monroe to return to its former policy of not ticketing the Plaintiff when she leaves her car in a one hour parking space for the entire work day . . . . Or have the City of Monroe reserve a free accessible parking space on the street next to her office." Jones did not seek injunctive relief for other disabled individuals based on lack of meaningful access. In addition, Jones did not request injunctive relief in the form of forcing Monroe to bring the free all-day parking spaces into compliance with the applicable construction and design standards. For purposes of this appeal, therefore, any noncompliance with standards in constructing these spaces is immaterial.

differently in any respect.[6] Thus, the district court did not err in determining that Jones was not excluded from parking benefits offered by Monroe.

The dissent repeatedly states that Jones is excluded from the benefit of free downtown parking. However, the dissent fails to explain how Jones is denied this benefit. Jones has equal access to the free downtown parking, and she can park there if she chooses. While the dissent claims to define the benefit at issue as "free downtown parking," the dissent later identifies the benefit as the ability "to park for free all-day in spaces that allow them meaningful access to their destination." The dissent thus conflates meaningful access to downtown parking with meaningful access to an individual's destination of choice. When applied to the facts of the instant case, it is apparent that the dissent is defining the benefit at issue as the latter and not the former. Jones has equal access to free downtown parking. She does not have free downtown parking accessible to any destination she selects or, unfortunately, her workplace. The benefit that Monroe is providing to all of its citizens, including Jones, is free downtown parking at specific locations; it is not free downtown parking that is accessible to wherever a citizen, disabled or non-disabled, chooses to go or work.[7]

---

[6]Recently, in *Henrietta D.*, the Second Circuit noted that under the ADA "there must be something different about the way the plaintiff is treated 'by reason of . . . disability.'" 2003 WL 21308851, at 12 (quoting 42 U.S.C. § 12132). In the instant case, Jones has not been treated differently from non-disabled individuals or denied any benefit.

[7]The dissent sets forth a lengthy hypothetical purporting to illustrate the distinction between what the dissent perceives to be the essence of Jones's claim (that she is being denied the benefit of free all-day parking), and what the majority perceives to be the essence of Jones's claim (that the ADA requires Monroe to provide Jones with an all-day parking space in the location she requests). The hypothetical is distinguishable because it involves a case where the disabled individual has no access to the service or benefit by reason of his or her disability, and the only available accommodation is the waiver of the city's rule. In the present case, Jones

Contrary to the dissent's argument that the Supreme Court's opinion in *Choate* supports a finding of discrimination, a proper application of *Choate* requires a finding that Jones has not been denied meaningful access to the parking benefit provided by Monroe. In *Choate*, Medicaid recipients sued the State of Tennessee for declaratory and injunctive relief when the state decided to reduce, from twenty to fourteen, the number of inpatient hospital days that state medicaid would pay hospitals on behalf of a medicaid recipient in each year. 469 U.S. at 289. The medicaid recipients argued that the fourteen-day rule denied them meaningful access to Medicaid services in Tennessee in violation of the Rehabilitation Act. *Id.* at 301-02. The Court noted that the fourteen-day limitation would not deny the medicaid recipients meaningful access to Medicaid or exclude them from those services. *Id.* at 303. The Court held that the benefit provided was the "individual services offered" and not the amorphous objective of 'adequate health care.'" *Id.* The Court further stated that the State is not required to alter the definition of the benefit offered "simply to meet the reality that the handicapped have greater medical needs." *Id.* According to the Court, "[t]he Act does not . . . guarantee the handicapped equal results from the provision of state Medicaid, even assuming some measure of equality of health could be constructed." *Id.* at 305.

Jones has access to the service offered by Monroe - free downtown parking in specific locations. She does not have a right to free downtown parking that allows her access to her destination of choice. The reality of Monroe's free downtown parking system is that not every person is going to have

---

is not denied access to the benefit, and there are alternative accommodations available to Jones.

access to his or her workplace or other destination of choice.[8] Monroe provides the benefit of free downtown parking at specific locations, and these locations will necessarily be more accessible to some workplaces than others. As the *Choate* Court noted, however, equal results from the provision of the benefit, even assuming equal results could be achieved, are not guaranteed. *Id.* at 305. The dissent claims that "Jones has never taken the position that she should be able to park wherever she wants." Yet, that is precisely the logical result of defining the benefit provided as meaningful access to one's destination of choice.

The essence of Jones's position is that the ADA requires Monroe to provide her an all-day parking place in the exact location she requires. Under the ADA, Jones's individualized need for a particular spot is most appropriately considered in determining whether permitting her to park all day in a one-hour parking place adjacent to her office is a reasonable accommodation which Monroe must make. The district court did not specifically rule on this issue in determining that Jones had not established a likelihood of success on the merits. As noted previously, a "qualified person with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies or practices ... meets the essential requirements for receipt of services or the participation in programs or activities provided by a particular entity." 42 U.S.C. § 12131. The applicable regulations interpreting Title II state as follows:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modification is necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that

[8]The dissent would create a rule under which, if Monroe provides free parking anywhere in the city, it could arguably be required to provide free parking to disabled individuals anywhere in the city they choose to go. Under the dissent's logic, access to free parking could arguably be extended to individuals other than those traveling to downtown locations.

making the modifications would fundamentally alter the nature of the service, program or activity.

28 C.F.R. § 35.130(b)(7).

Jones describes her requested accommodation as "allowing her to park in one of the 11 parking spaces" adjacent to her office. By contrast, Monroe describes Jones's requested accommodation as "immunity from prosecution for her violations of Monroe's neutral parking and enforcement ordinances." Any accommodation on the part of the entity only needs to be "reasonable." *Johnson v. City of Saline*, 151 F.3d 564, 571 (6th Cir. 1998). An accommodation is not reasonable if it imposes a fundamental alteration in the nature of the program. *See* 28 C.F.R. § 35.130. The public entity bears the burden of proving that the accommodation would fundamentally alter the program. *Popovich v. Court of Common Pleas Domestic Relations Div.*, 227 F.3d 627, 639 (6th Cir. 2000), *rev'd on other grounds*, 276 F.3d 808 (6th Cir. 2002) (en banc). In cases involving waiver of applicable rules and regulations, the overall focus should be on "whether waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Dadian v. Village of Wilmette*, 269 F.3d 831, 838-39 (7th Cir. 2001) (quoting *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 850 (7th Cir. 1999)).

The purpose of the one-hour limitation is to encourage patrons to shop at downtown businesses. Waiver of the ordinance limiting parking to one hour in the business district would be "at odds" with the fundamental purpose of the rule. By its very nature, the benefit of one-hour free public parking cannot be altered to permit disabled individuals to park all day without jeopardizing the availability of spaces to other disabled and nondisabled individuals. Such a waiver would also require Monroe to cease enforcement of an otherwise

valid ordinance, which by its very nature requires a fundamental alteration of the rule itself.[9]

In addition, the record contains evidence of alternative accommodations available to Jones such as a service which will pick her up at any Monroe parking lot, based on a schedule constructed personally for Jones, and take her to the door of her office building. Accordingly, Jones's requested modification, whether characterized as assignment of a particular parking location or immunity from prosecution, is not a reasonable accommodation required under the ADA. The district court's failure to discuss this issue therefore does not render its denial of the preliminary injunction an abuse of discretion.

Because the district court did not rely upon clearly erroneous findings of fact, improperly apply the governing law, or use an erroneous legal standard, it did not err in denying Jones's request for a preliminary injunction.

---

[9]The dissent relies heavily on the Supreme Court's opinion in *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001), in concluding that the modification requested by Jones is not a fundamental alteration. In *Martin*, the Court first determined that the requested modification, waiver of the walking requirement, might constitute a fundamental alteration by (1) altering an essential aspect of the game so that it would be unacceptable even if it affected all competitors equally, or (2) altering an aspect of the game that has only a peripheral impact, but nevertheless gives a disabled player an advantage over others thereby fundamentally altering the character of the competition. *Id.* at 682. The Court concluded that the "use of carts is not itself inconsistent with the fundamental character of the game of golf," because "the essence of the game has been shotmaking." *Id.* at 683. Parking, however, is hardly analogous to the game of golf. Moreover, the essential element of a one-hour free public parking area is the time limitation on an individual's ability to use a designated space to park his or her vehicle. Alteration of the time limit on spaces designated for one-hour parking is a fundamental alteration of the parking scheme.

### III.

For all the reasons set forth above, we affirm the district court's denial of preliminary injunctive relief.

---

**DISSENT**

---

R. GUY COLE, JR., Circuit Judge, dissenting. The majority opinion errs in its application of the ADA to the facts of this case, applying the statute in a manner that essentially eviscerates the ADA's purpose and renders the ADA impotent in its ability to provide recourse for disabled individuals, such as Helen Jones, who face a form of discrimination which Congress has explicitly prohibited. Accordingly, I respectfully dissent.

The majority correctly sets out the three elements of a prima facie case of discrimination under Title II of the ADA. A plaintiff must establish that she: (1) has a disability; (2) is otherwise qualified to benefit from the public program; and (3) is unable to do so as a result of her disability. *Kaltenberger v. Ohio Coll. of Pediatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). In my view, Jones has established her prima facie case, and Monroe is thus required to accommodate Jones's disability by making "reasonable modifications" so long as these modifications would not "fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7).

Monroe does not dispute that Jones has a disability. Accordingly, in order to hold that Jones does not have a reasonable likelihood of success on the merits, we must find either: (1) that she was not otherwise qualified to benefit from the public service or program and thus does not meet the second element of the prima facie case; (2) that she is able to receive the benefit despite her disability and thus does not meet the third element of the prima facie case; or (3) despite establishing a prima facie case, the modification Jones seeks would fundamentally alter the nature of the service or program provided by Monroe.

## I. Facts

Jones works as a substance abuse counselor for deaf and hearing-impaired individuals. Her multiple sclerosis causes tremors in her arms and legs, and results in severe fatigue. She is not capable of walking long distances and therefore relies on a wheelchair. Jones's wheelchair, however, is a manual model, and the exertion required to move long distances can also cause her significant fatigue. Jones is able to drive her car, but she is not able to get her wheelchair in and out of the car by herself. Thus, her practice has been to park in one of the parking spaces adjacent to her building and walk across the sidewalk to the building, where she has left her wheelchair at the door.

Jones's symptoms become more pronounced as the day progresses. As her fatigue increases, she can lose the fine motor skills necessary to communicate with her deaf clients. In addition, Jones is unable to walk across an intersection in the time that it takes for the light to change, and is unable to stand, unassisted, on a sidewalk for more than five minutes. Jones's treating physician has testified that Jones should avoid any unnecessary stress and exertion.

Monroe provides free day-long parking in several municipal lots throughout downtown. Other individuals employed in Jones's office building are able to utilize this service to access their workplace. Within two blocks of Jones's workplace are several municipal lots providing a total of 373 free spaces where individuals are able to park for the entire day. Of these 373 spaces, sixteen have been designated as handicapped spaces.

Monroe has limited parking to one hour at an additional 110 free parking spaces in the retail district, where Jones works. This time limitation is intended to allow for patron parking and to discourage employees from using these particularly convenient spaces. There are eleven such spaces adjacent to Jones's building. The closest space is twenty-one

feet from the entrance to her building; the farthest is sixty-five feet. The closest handicapped space in one of the free day-long lots provided by Monroe is 592 feet from the building – a distance far too great for Jones to manage.

The majority notes that the record contains evidence of an alternative accommodation for Jones, stating that she can be picked up at any Monroe lot and taken to the door of her building. This accommodation is not a viable option for Jones. She often works odd hours, including well into the evening, frequently on short notice, and this transit service requires at least twenty-four hours notice to schedule a pick-up for a disabled individual. In addition, the service stops running at 5:30 p.m. The Salvation Army has provided its own van on occasion to transport her to and from the lots to her work, but reliance on this private accommodation–which is not provided by Monroe–is misplaced. Moreover, this option is no longer available because the Salvation Army van is not wheelchair accessible, and its driver was seriously injured trying to help Jones out of the vehicle.

## II. Standard of Review

The majority states that we are to review the district court's judgment for an abuse of discretion. It is true that this Court generally reviews decisions on whether to grant a preliminary injunction for an abuse of discretion. *See McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997). However, if pure legal conclusions are involved, we review the judgment of the district court de novo. *See id.* (stating that, in an appeal of a ruling on a preliminary injunction, factual findings are reviewed for clear error, and legal rulings are reviewed de novo). Jones does not dispute any factual findings made by the district court. Whether the ADA requires Monroe to provide Jones with the requested modification of its parking policy is strictly a legal question. Therefore, we are not to give deference to the judgment of the district court.

## III. Whether Jones is a Qualified Individual with a Disability

Monroe argues that Jones is not a qualified individual with a disability because she is not a person who is contemplated to be served by Monroe's one-hour parking ordinance. As such, she is not protected by the ADA.

It is incorrect, however, to address the benefit that Jones claims she is being denied as though it revolves around the one-hour parking ordinance. Jones has never complained that she is being denied the benefit of this one-hour ordinance. Jones argues that Monroe provides all individuals the benefit of free downtown parking, and this is undisputed. The one-hour ordinance is only relevant insofar as it prevents Jones from enjoying the benefit of the free all-day downtown parking program. Therefore, while the one-hour ordinance may be relevant to whether Jones's requested modification is a fundamental alteration, it is wholly inapplicable to the question of whether she is a qualified individual with a disability.

The majority concludes that "[t]he essence of Jones's position is that the ADA requires Monroe to provide her an all-day parking space in the exact location she requires." However, this is not the essence of her claim. Jones has never taken the position that she should be able to park wherever she wants. The "essence" of her claim is that because Monroe provides free and accessible all-day parking for everyone else, it cannot effectively deny her the benefit of this parking program because of her disability.

A hypothetical example may serve to illuminate this issue. Suppose that a city provides the service of a public library for the enjoyment of its citizens. The library has three separate entrances, East, West, and South, all of which are equipped with wheelchair ramps. The wheelchair ramp at the South entrance is slightly wider than the other two. A certain disabled individual, Ms. Smith, enjoys utilizing the library,

just as all other disabled and able-bodied individuals are able to do. Unfortunately for Smith, her particular disability requires her to use a specially designed wheelchair that is larger than other wheelchairs, and she therefore cannot access the library through the East or West entrance.

After some time, the city decides that it has to do more to encourage children to read, and so it converts the South wing of the library to "Kiddies Land," where there are many activities designed to develop children's interest in reading. The city has determined that this plan is beneficial because it serves not only to encourage children to read, but also to increase the revenues generated by the library. Additionally, the city has decided that in order to reap the full benefits of Kiddies Land, adult patrons may not use the South wing. As a result, Smith requests that she be permitted to use the South entrance without being subject to the monetary fine the city has decided to impose on adults who enter the South wing. The city rejects her request. Nevertheless, Smith continues to access the library through the South entrance, and is severely fined each time she does so.

Smith sues under the ADA, arguing that the city is providing a service, in the form of a public library, that she is denied the benefit of using due to her disability. She requests that the reasonable modification be made to allow her to use the South entrance. In such a situation, it would make no sense for the court to hold that Smith is not a qualified individual with a disability because the South wing of the library is intended for the benefit of children. Smith is not complaining that she is not allowed to use Kiddies Land. She is complaining that, due to her rare disability, she is denied access to the entire library. The use of the South entrance is merely the reasonable modification she proposes in order to have the same library access as other citizens. The city may argue that permitting Smith access through the South wing would fundamentally alter Kiddies Land. It cannot be said, however, that Smith is not a qualified individual under the

ADA when she seeks access to the library itself rather than access to Kiddies Land.[1]

The Technical Assistance Manual for Title II of the ADA sheds further light on the issue of whether Jones is "otherwise qualified." The manual confronts the question of whether accommodations such as freight elevators can be used to satisfy the program accessibility requirements. *See* ADA TECHNICAL ASSISTANCE MANUAL II-5.1000 (1993). The manual states that such arrangements are permissible, as a last resort, so long as the passageways remain reasonable in length, fairly well lit, and generally clean. *See id.* The argument asserted by Monroe, however, inescapably conflicts with the manual. By Monroe's logic, a disabled individual would not be permitted to use a freight elevator because the freight elevator is not intended to transport members of the public. Therefore, the disabled individual would not be "otherwise qualified." The example in the Technical Assistance Manual exposes the flaw in this logic. It is therefore clear that Jones has satisfied the second element of her prima facie case by demonstrating that she is otherwise qualified to benefit from the program.

### IV. Whether Jones is Able to Benefit from the Parking Program

The majority asserts that Jones has equal access to the free downtown parking, that she can park there if she chooses, and that she therefore is not denied the benefit provided by

---

[1] The majority's attempt to distinguish this hypothetical example from Jones's case is inapposite. While the majority may assume that Jones has satisfied the second element of her prima facie case, Monroe argues that she has not. I put forth this hypothetical illustration to demonstrate the futility of Monroe's argument that Jones is not otherwise qualified to benefit from the parking program. By stating that Smith's case is different from Jones's because Jones is not denied access to the benefit, the majority is attempting to demonstrate why Jones does not meet the third element of her prima facie case - a question I address in Part IV of this opinion, but do not intend to address in this illustration.

Monroe. While it is true that she may park in the free all-day lot if she chooses to do so, this does not mean that she has the "meaningful access" that the ADA requires. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (noting that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit offered). For Jones to be able to benefit from Monroe's parking program, she needs to be able to have access to the locations which non-disabled individuals can access from these parking lots. The majority accuses me of conflating meaningful access to downtown parking with meaningful access to an individual's destination of choice. However, I do not believe that Jones has the right to meaningful access to her destination of choice. I do not contend that, if Monroe provides free parking anywhere in the city, it must provide free parking to disabled individuals anywhere in the city they choose to go. Of course, to the extent that free, accessible parking is not provided for non-disabled individuals, it need not be provided for anyone. I do, however, believe that she has the right to the benefit of meaningful access to those locations that–but for her disability–would be accessible to her through Monroe's parking program. I am not conflating this benefit with free downtown parking. Rather, the majority's attempt to separate the two is artificial. Parking is only meaningful insofar as it provides individuals with access to their destinations.

Returning to the hypothetical illustration, if Ms. Smith were to gain access to the library, only to find that all of the books were placed on shelves too high for her to reach from her wheelchair, the city would be required to accommodate her and make sure that she had access to the books she could not reach. Entry into the library is only meaningful because it provides individuals with access to the books the library contains. Under the majority's logic, if Smith were to argue that the ADA requires that she be given access to the high-shelved books, she would be conflating access to the library with access to the books of her choice.

The majority cites *Choate* in support of the proposition that "the benefit is not appropriately defined as free downtown parking generally, but rather as the provision of all-day and one-hour parking in specific locations." This does not clarify precisely how the majority is defining the benefit, which is critical to this case. The provisions for all-day parking and one-hour parking are two separate and clearly distinct provisions. Jones only claims that she is denied the benefit of the former.

In *Choate*, the Court explicitly addressed the issue of defining the benefit, and made clear that the approach the majority takes here is impermissible. It stated, "The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the . . . benefit may have to be made." 469 U.S. at 301. The Court also noted that "[a]ntidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit." *Id.* at 301 n.21.

In determining that the benefit provided in *Choate* was "individual services offered," rather than the more amorphous benefit of "adequate health care," the Court noted that "[t]he 14-day limitation will not deny [the disabled individuals] meaningful access to Tennessee Medicaid services or exclude them from those services." *Id.* at 302-03. In contrast, Jones is clearly denied meaningful access to parking services, as the only spaces she is permitted to use are inaccessible to her. Unlike the plaintiffs in *Choate*, Jones is therefore altogether excluded from meaningful access to the service.

The *Choate* Court also explained, "The reduction in inpatient coverage will leave both handicapped and nonhandicapped Medicaid users with identical and effective services fully available for their use, with both classes of users subject to the same durational limitation." *Id.* While

the durational limitations in the one-hour spaces are certainly identical for both classes of individuals, in the present case, unlike *Choate*, the durational limitation in and of itself is not the problem. Rather, the problem here is that the durational limitation renders Jones unable to take advantage of a benefit clearly distinct from the durational limitation, that is, free and accessible, all-day downtown parking.

Lastly, in *Choate*, "[t]he 14-day limitation . . . [did] not exclude the handicapped from or deny them the benefits of the 14 days of care the State [chose] to provide." *Id.* In contrast, Jones is excluded from the benefits of free and accessible downtown parking because her disability prevents her from utilizing the all-day spaces Monroe chose to provide altogether.

It is true that the Supreme Court noted that "Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs," *id.* at 303, but an attempt to claim that Jones is likewise not guaranteed a parking space precisely tailored to her particular needs is wholly unpersuasive. A fair reading of *Choate* indicates that the Supreme Court would have found a violation of the Rehabilitation Act if Tennessee's actions had the effect of completely denying any individual access to inpatient care. Here, Jones is denied access to all possible parking spaces, whether by reason of her disability or Monroe's one-hour restriction. Thus, the difference between the services provided for others and the services provided for Jones is a difference in kind, and not merely degree. She is completely denied an effective parking space, and the language in *Choate* suggests that the Court would not have countenanced this type of discrimination. Thus, a proper application of *Choate* compels finding for Jones.

The majority's position is that Jones has access to downtown parking just as nondisabled individuals do. This argument ignores the fact that other individuals who work in downtown Monroe are able to benefit from Monroe's free

parking program only because it allows them access to their "destination of choice." It may be true that Monroe's downtown parking system requires that not every person is going to have access to his or her own workplace. However, it is equally true that Monroe's downtown parking system provides parking that would be accessible to Jones but for her disability. The analysis is straightforward. Jones is denied the relevant benefit because, if Jones did not have multiple sclerosis, she would be provided with free all-day parking that gives her access to the building where she works. Because she has multiple sclerosis, she is not provided with that benefit. There is no question, therefore, that she satisfies the third element of her prima facie case, that is, she is unable to benefit from the public program because of her disability.

## V. Whether the Requested Modification is Unreasonable or Fundamentally Alters the Nature of the Service Provided

The majority also finds that to permit Jones to park in one of the spaces adjacent to her building would fundamentally alter the nature of the service Monroe provides. The majority, however, points to nothing about the requested modification that would fundamentally alter the service in any way, other than merely pointing out that the requested modification is a change. But this is precisely what the governing statutes require. If courts were permitted to hold, as the majority does here, that any "modification" fundamentally alters the service because it requires that the service be "modified," the Rehabilitation Act and the ADA would be rendered ineffectual. It is worth restating that Jones does not complain that she is being denied the benefit of the one-hour parking ordinance. Our analysis requires us to consider whether the modification Jones requests fundamentally alters the program or service of which she is denied the benefit. Accordingly, it is not proper to analyze the fundamental-alteration question based on whether the one-hour ordinance is fundamentally altered.

The Supreme Court has explicitly rejected the idea that any mere alteration of a rule is fundamental. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 n.51 (2001) (disapproving of a reading of the ADA that would render the word "fundamentally" largely superfluous). Requiring public entities to make changes to rules, policies, practices, or services is exactly what the ADA does. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 782-83 (7th Cir. 2002). The Court recognized the administrative burdens that Congress knew it was imposing when passing the ADA. *See Martin*, 532 U.S. at 680. The majority essentially contends that requiring an entity to make such changes *ipso facto* results in a fundamental alteration, and is therefore not required by the ADA. This is simply not the case.

Recent Supreme Court precedent compels a finding that the modification Jones requests is not a fundamental alteration. In *Martin*, a disabled professional golfer, Casey Martin, sued the PGA for refusing to permit him to ride in a golf cart as a modification of its "walking rule." *See Martin*, 532 U.S. at 669. The PGA argued that the goal of its tournaments was to compare the performance of competitors, a task that is meaningful only if identical substantive rules apply to all competitors. *Id.* at 686. The PGA claimed that the waiver of any rule that may alter the outcome of the event necessarily violates this principle, and the reasonable modification Martin sought would therefore be a fundamental alteration. *Id.* Despite this argument, the Supreme Court held that the refusal to grant Martin's request was discrimination prohibited by the ADA, finding that permitting him to ride in a cart would not fundamentally alter the nature of the golf tournaments. *Id.* at 689.

Of particular note is that neither the majority nor the dissent in *Martin* analyzed whether waiving the walking rule would fundamentally alter that rule itself, rather, they assessed whether waiving the rule would fundamentally alter golf tournaments. The Court's recognition of the appropriate

framing in *Martin* compels us to take the same approach here. Here, therefore, we must consider whether waiving the one-hour ordinance for Jones would fundamentally alter the overall parking scheme downtown, not its effect on the one-hour ordinance. Had the Supreme Court utilized the rationale the majority uses here, it would have simply stated that waiver of the walking rule "by its very nature" fundamentally alters the walking rule, and is therefore not required by the ADA.[2]

Similarly, in the recent case of *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299 (1st Cir. 2003), the First Circuit considered whether a retailer's policy of never reconsidering a cashier's refusal to sell alcohol to a customer who appeared intoxicated violated the ADA. In *Dudley*, the plaintiff had suffered severe trauma in an automobile accident, and regularly exhibited characteristics often associated with intoxication. *Id.* at 301. Because he appeared intoxicated, a cashier refused to sell him alcoholic beverages. *Id.* at 302. When the plaintiff asked to speak to a manager and explained his situation, the manager, despite believing that the plaintiff's

---

[2]The majority discounts the instructiveness of *Martin*, because parking "is hardly analogous to the game of golf." However, I believe that *Martin*'s precedential value extends well beyond the golf course. The majority's criticism, if valid, could well be directed at their reliance on *Choate*, as parking benefits are similarly "hardly analogous" to Medicaid benefits. My view that both *Choate* and *Martin* are instructive here is in no way based any similarities between Medicaid, golf, and parking. A number of federal circuit courts have applied *Martin* to ADA cases involving factual scenarios similarly different from golf. *See, e.g., Dudley v. Hannaford Bros. Co*, 333 F.3d 299, 307 (1st Cir. 2003) (relying on *Martin* in holding that a retailer's policy of never reconsidering a refusal to sell alcohol to a customer violated the ADA); *Kapche v. City of San Antonio*, 304 F.3d 493, 498 (5th Cir. 2002) (relying on *Martin* in holding that an individualized inquiry is required in assessing whether a city violated the ADA in deeming an insulin-dependent applicant ineligible for a position as a police officer); *Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001). I believe that *Martin* and *Choate* are instructive and precedential because they interpret the relevant statutes and announce legal principles that are directly applicable to this case.

story was plausible, relied on the store's policy that management would not revisit a cashier's refusal to sell alcohol to a customer. *Id.* Citing *Martin*, the First Circuit noted that, because the plaintiff established his prima facie case, the defendant had to establish that the requested modification, withdrawal of the "refusal to reconsider" policy, fundamentally altered the nature of its business. *Id.* at 307-08. Again, it is important to note that the court did not consider whether withdrawal of the policy fundamentally altered the nature of the policy itself. Of course, the waiver of any rule alters that rule tautologically. Rather, the court assessed whether withdrawal of the policy would fundamentally alter the nature of its business, and found that it would not. *Id.* at 308-09. Again, applying this reasoning to the present case, it is clear that we should be considering whether exempting Jones from the one-hour ordinance fundamentally alters Monroe's downtown parking scheme as a whole, not whether it fundamentally alters the one-hour ordinance itself.[3]

I recognize that the precise contours of when an alteration is properly considered fundamental under an ADA analysis may be difficult to define. It is clear, however, that whatever this standard demands, in order to be a fundamental alteration, the requested modification must result in an alteration more

---

[3] I cannot overstate the importance of applying the proper scope of analysis when deciding whether a modification is a fundamental alteration. In this case, contrary to *Martin* and *Dudley*, the majority considers whether waiver of the one-hour ordinance fundamentally alters the one-hour ordinance itself, rather than whether it fundamentally alters Monroe's downtown parking scheme as a whole. Because I fear that the majority opinion may be read to establish a dangerous precedent that permits analyzing whether a requested modification is a fundamental alteration in a manner that would render virtually all modifications "fundamental alterations," I also wish to note that the majority's discussion of the fundamental-alteration issue is merely dicta. Because the majority finds that Jones does not meet the third element of her prima facie case, there is no need for the majority to assess whether her requested modification is a fundamental alteration.

fundamental than the modification requested in *Martin*. The present action is not such a case. If the ADA requires the PGA to alter the enforcement of the walking rule to accommodate Martin's disability, it surely must require Monroe to alter the enforcement of its one-hour parking ordinance to accommodate Jones's disability.

The majority asserts that "[b]y its very nature, the benefit of one-hour free public parking cannot be altered to permit disabled individuals to park all day without jeopardizing the availability of spaces to other disabled and nondisabled individuals." This statement misses the point.

First, as the majority recognizes, the ADA requires courts to conduct an individualized inquiry. The Supreme Court has stated that "the ADA was enacted to eliminate discrimination against 'individuals' with disabilities . . . . To comply with this command, an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances." *Martin*, 532 U.S. at 688. Jones does not contend that Monroe's parking program should be altered to permit disabled individuals to park all day in the spots most convenient for them. Jones argues only that *she* should be able to park in one of the *only eleven spots capable of accommodating her needs* – not most convenient for her.

It is fair to say that, on their face, the parking limitations do not affect disabled and nondisabled individuals differently, and it is also true that most disabled individuals are able to comply with the parking limitations and benefit from the parking services. Jones, however, cannot. The ADA requires the question to be whether the parking limitations affect *any* disabled individual differently than they affect the nondisabled. Because of her disability, the parking limitations clearly do affect Jones differently than nondisabled individuals. Other similarly situated individuals are able to park for free all-day in spaces that allow them meaningful access to their destination, but Jones is not.

Second, whether the requested alteration "jeopardizes the availability" of spaces to other individuals is not the appropriate legal question. Virtually every accommodation made for disabled individuals, in one slight manner or another, "jeopardizes" others. Handicapped spaces in shopping mall parking lots "jeopardize" the availability of parking spaces for nondisabled shoppers. Permitting Casey Martin to ride in a cart during a golf tournament "jeopardizes" other golfers' chances of winning the tournament. But this is simply what the ADA requires.

The appropriate questions are whether the requested modification is unreasonable, and whether the modification fundamentally alters the service. Here, the modification is clearly reasonable and fundamentally alters nothing. Monroe's one-hour parking program provides 110 free spaces. If Jones were accommodated, only 109 would be available during certain times. This simply cannot constitute a "fundamental alteration."

The Technical Assistance Manual also proves to be illuminating on this issue. The manual does not even contemplate that permitting a disabled individual to use a freight elevator would be a fundamental alteration, despite the fact that freight elevators are intended to transport freight, rather than individual members of the public. *See* ADA Technical Assistance Manual II-5.1000. The acknowledgment that a freight elevator could be used as an accommodation implicitly affirms that permitting such use does not constitute a fundamental alteration.

The manual also provides the following compelling illustration of a modification that would be a fundamental alteration: "Installing an elevator in an historic house museum to provide access to the second floor bedrooms would destroy architectural features of historic significance on the first floor." ADA Technical Assistance Manual II-5.5000. In such a situation, the installation of an elevator would indeed be a fundamental alteration. The sharp contrast, however,

between this sort of modification and the benign modification requested by Jones, is obvious. The alteration to the historic house is fundamental; the request by Jones is simply an alteration.

The majority also asserts that providing Jones with her requested modification would "require Monroe to cease enforcement of an otherwise valid ordinance." This is not the case. The ADA requires only that Monroe cease enforcement of the one-hour ordinance with respect to Jones. Monroe would still be free to enforce the ordinance with respect to others who violate it. *Martin* simply held that the individual plaintiff must be permitted to use a golf cart in PGA tournaments, not that the PGA had to permit all golfers to use carts. The PGA only had to cease the enforcement of its rule with regard to Martin. *See Martin*, 532 U.S. at 689 (stating that the walking rule could "be waived *in individual cases* without working a fundamental alteration") (emphasis added).

## VI. Preliminary Injunction Factors

I do not take issue with the four factors noted by the majority which the district court is to consider when considering a motion for a preliminary injunction. However, for the reasons detailed above, I believe that Jones has a high likelihood of success on the merits. In addition, the emotional and physical toll that Jones suffers from being denied a parking spot is surely irreparable, especially in light of the severity of her multiple sclerosis. The harm to others in this case is negligible. The public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA. In addition, permitting Jones to park adjacent to her building improves her capacity to counsel her clients, which also serves the public interest. Thus, proper consideration of all four factors requires this Court to grant Jones's request for injunctive relief.

## VII.  The District Court's Abuse of Discretion

As stated above, I contend that the majority improperly applies an abuse of discretion standard of review in this case, when a de novo standard is required.  However, the legal arguments in favor of Jones in this case are so strong that application of a clearly erroneous standard would not change the result.  As the majority notes, the district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.  *Nightclubs*, 202 F.3d at 888.

Because Jones is being denied the benefit of free and accessible all-day parking due to her disability, and because the modification she requests is not a fundamental alteration, the district court "improperly applied governing law," and the decision was therefore an abuse of discretion.

In addition, the district court "used an erroneous legal standard."  In assessing Jones's likelihood of success on the merits, the district court stated only that "[t]he City's parking plan takes into account the needs of the handicapped and does not, on its face, seem to violate the ADA.  In short, the City's parking plan seems to comply with the federally mandated standard of equal access."  Whether the parking plan, on its face, seems to violate the ADA is not the appropriate legal standard, nor is whether the plan seems to comply with the standard of equal access. The appropriate legal standards are whether Jones is being denied a benefit due to her disability, and whether the modification she seeks is a fundamental alteration.  The district court therefore used erroneous legal standards in disposing of this case.  Accordingly, the erroneous legal standards used by the district court require this Court to find the district court's judgment to be an abuse of discretion.

## VIII.  Conclusion

As the First Circuit has noted, the ADA "did not emerge in a vacuum."  *Dudley*, 333 F.3d at 303.  Congress found that "society has tended to isolate and segregate individuals with disabilities," creating "a serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).  Congress explicitly noted that disabled individuals continually encounter discrimination that includes, among other things, the discriminatory effects of architectural and transportation barriers, failure to make modifications to existing practices, and relegation to lesser benefits.  *Id.* § 12101(a)(5).  In order to ensure full participation of disabled individuals in our society, Congress enacted the ADA to "address the major areas of discrimination faced day-to-day by people with disabilities."  *Id.* § 12101(b)(4).

The majority decision is in direct conflict with the intent of Congress, the text of the statutes, and the corresponding regulations, and the decision also violates binding Supreme Court precedent.  Because the benefit "cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled," *Choate*, 469 U.S. at 301; and because we cannot read the ADA in a manner that "renders the word 'fundamentally' largely superfluous," *Martin*, 532 U.S. at 689 n.51, I would reverse the district court and grant Helen Jones's motion for a preliminary injunction.