ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

November 8, 2007

The Honorable Rodney Ellis
Chair, Committee on Government Organization
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0579

Re: Whether the Texas Lottery Commission violates the Americans with Disabilities Act if it fails to provide "meaningful access" to state services (RQ-0586-GA)

Dear Senator Ellis:

You ask whether the Texas Lottery Commission (the "Commission") violates the Federal Americans with Disabilities Act (the "ADA") if it fails to provide "meaningful access" to state services.[1]

## I. Statutory and Regulatory Background

The ADA is a civil rights law prohibiting discrimination based on disability. *See generally* 42 U.S.C. §§ 12101–12213 (2000 & Supp. IV 2004). Title I of the ADA prohibits employment discrimination on the basis of a person's disability. *See id.* §§ 12111–12117; *see also* 29 C.F.R. pt. 1630 (2006) (rules promulgated by the Federal Equal Employment Opportunity Commission to enforce and implement title). Title II prohibits discrimination against disabled persons by public entities. *See* 42 U.S.C. §§ 12131–12165 (2000 & Supp. IV 2004); *see also* 28 C.F.R. pt. 35 (2006). Title III prohibits discrimination against disabled persons in places of public accommodation. *See* 42 U.S.C. §§ 12181–12189 (2000); *see also* 28 C.F.R. pt. 36 (2006).

Your question, whether the Commission violates the ADA by failing to provide "meaningful access" to state services, primarily concerns title II, and thus we confine our analysis accordingly. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2000). The United States Department of Justice (the "DOJ") has promulgated rules to enforce and implement title II. *See* 28 C.F.R. pt. 35 (2006) (implementing title II, subchapter A). Additionally,

---

[1]Letter from Honorable Rodney Ellis, Chair, Senate Committee on Government Organization, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas (Apr. 25, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us).

the DOJ has published an appendix providing a section-by-section analysis of those rules with commentary to aid in their implementation. *See id.* app. A (Section-By-Section Analysis); *id.* pt. 36, app. B (Section-By-Section Analysis and Response to Comments). *See also* Tex. Att'y Gen. Op. No. JC-0050 (1999) at 1–2 (providing additional background to the ADA).

## II.    Analysis

Title II applies to the actions of a "public entity," defined to include "any department, agency, special purpose district, or other instrumentality of a State." 42 U.S.C. § 12131(1)(b) (2000). According to section 12131(1)(b), a state agency, such as the Commission, is a public entity subject to the rules and regulations specified by title II of the ADA to the extent that title II validly abrogates a state's sovereign immunity.[2] *See id.*; TEX. GOV'T CODE ANN. §§ 466.001–.303 (Vernon 2004) (the State Lottery Act, which establishes the Commission and its administrative authority). Section 12132 of title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2000). The DOJ regulation implementing section 12132 requires a "public entity [to] make reasonable modifications in policies, practices, or procedures when . . . necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7) (2006).

Because title II requires that a public entity comply with regulations very similar to section 504 of the Rehabilitation Act of 1973, courts look to the Rehabilitation Act to interpret the ADA. *See* Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794 (2000 & Supp. IV 2004) [hereinafter Rehabilitation Act]; *see also Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1060 n.4 (5th Cir. 1997) (stating that the Rehabilitation Act is the predecessor to the ADA and may be used to interpret the ADA). The Rehabilitation Act requires a public entity to make reasonable accommodations when a person with a disability is denied meaningful access to a benefit.[3] *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (stating that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers [and] to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made").

---

[2]*See United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 882 (2006) (holding that title II abrogates state sovereign immunity "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment").

[3]Although the Court of Appeals for the Fifth Circuit and other federal courts in Texas have not addressed the question specifically, other circuit courts have held that "reasonable modification," as it is used in the ADA, does not create a different standard from "reasonable accommodation," as that term is used in the Rehabilitation Act. *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th Cir. 1999); *Theriault v. Flynn*, 162 F.3d 46, 48 n.3 (1st Cir. 1998). However, we note that the Court of Appeals for the Fifth Circuit has held that the DOJ regulations requiring the Dallas Area Rapid Transit to provide "reasonable accommodations" in its paratransit service did not apply because the paratransit service at issue there fell under title II, subtitle B of the ADA, and was subject only to Department of Transportation regulations. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 675 (5th Cir. 2004). The Commission's activities relate to title II, subtitle A of the ADA and are regulated by the DOJ.

In *Jones v. City of Monroe*, a driver who suffered from multiple sclerosis brought suit against a municipality on the ground that the city's parking program violated title II of the ADA by refusing to provide her with "meaningful access" to the parking program. *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 477 (6th Cir. 2003). Although the Court of Appeals for the Sixth Circuit ultimately ruled against appellant, it nevertheless applied the "meaningful access" standard to title II of the ADA. *Id.* at 479. Likewise, in *Lee v. City of Los Angeles*, the Court of Appeals for the Ninth Circuit equated "meaningful access" with the right to services under title II of the ADA: "If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of his or her disability, that individual may have an ADA claim against the public entity." *Lee v. City of Los Angeles, Cal.*, 250 F.3d 668, 691 (9th Cir. 2001) (footnote omitted).

In conclusion, because there is no controlling judicial authority in Texas, we cannot say as a matter of law that the Commission would violate title II of the ADA if it fails to provide Texas residents meaningful access to state services. On the other hand, because of persuasive authority from other federal appellate jurisdictions, we *can* say that a Texas court would probably conclude that the Commission would violate the ADA if it fails to provide Texas residents with meaningful access to state services.

## S U M M A R Y

A court would probably find that the Texas Lottery Commission violates the Americans with Disabilities Act if it fails to provide Texas residents with "meaningful access" to state services.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee