IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2007

Charles R. Fulbruge III
Clerk

No. 06-10657

———————

ROBERT PINKERTON

Plaintiff - Appellant

v.

US DEPARTMENT OF EDUCATION; SECRETARY OF THE US
DEPARTMENT OF EDUCATION, Margaret Spellings

Defendants - Appellees

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before JONES,[*] Chief Judge, and REAVLEY and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:

Robert Pinkerton, after his termination as an employee of the United States Department of Education ("DOE"), brought this suit alleging disability discrimination under Sections 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791 and 794. The precedent of this circuit allowed his suit under both sections of the Act and Pinkerton was entitled to the proper Section 501 causation standard. Because the jury charge stated the stricter causation requirement of Section 504, we must reverse the judgment and remand for a new trial.

---

[*] Concurring in the judgment only.

## I. Background

Pinkerton suffers from arthrogryposis, which causes developmental abnormalities such as shortness of limbs, deformed joints, and limitation of motion in limbs. He is visibly disabled and limited in his ability to use a keyboard. He began his employment with DOE in December 1980 as an Equal Opportunity Specialist in the Office for Civil Rights ("OCR"), under an initiative to recruit disabled individuals into federal employment.

In 1997, Timothy Blanchard became Pinkerton's first line supervisor and Taylor August became the Regional Director. In 2002, Blanchard issued a proposal to remove Pinkerton for unacceptable performance and August made the decision to remove Pinkerton.

Pinkerton filed a timely Equal Employment Opportunity ("EEO") complaint alleging discrimination and retaliation. DOE's Equal Opportunity Group issued a final agency decision finding no discrimination. In 2004, Pinkerton filed suit against DOE in federal district court under Sections 501 and 504 of the Rehabilitation Act.

Following a jury verdict favorable to DOE, the court rendered judgment to that effect. Pinkerton appeals the judgment, alleging errors in the jury charge and several evidentiary rulings.

## II. The Jury Charge

### A. Standard of Review

"[T]he district court has broad discretion in formulating the jury charge." Concise Oil and Gas P'ship v. Louisiana Intrastate Gas Corp.[1] This court reviews a jury charge with deference and will reverse "only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been

---

[1] 986 F.2d 1463, 1474 (5th Cir. 1993) (internal quotation marks omitted).

properly guided in its deliberations." Hall v. State Farm Fire & Cas. Co.[2] But the underlying question here—the causation standard under § 501 of the Rehabilitation Act—is one of statutory construction, which this court reviews de novo. Soledad v. U.S. Dep't of Treasury.[3]

## B. Discussion

### 1. The Section 501 and ADA Causation Standards Are Equivalent

Under our precedent, federal employees may bring disability discrimination claims against the government under either § 501 or § 504 of the Rehabilitation Act (29 U.S.C. §§ 791 & 794). Prewitt v. U.S. Postal Serv.[4] Some circuits disagree, holding that § 501 is the exclusive right of action for federal employees.[5] These courts reason that it makes "no sense for Congress to provide . . . different sets of remedies . . . for the same wrong committed by the same employer."[6] The controlling issue here, however, is the burden of proof for the causation connection between disability discrimination and the employment decision under § 501. The district court had the jury decide whether Pinkerton was terminated solely because of his disability, while he has insisted that the question should be whether his disability was a motivating factor in DOE's decision to terminate him.[7] Pinkerton preserved this issue at trial.

---

[2] 937 F.2d 210, 214 (5th Cir. 1991) (internal quotation marks omitted).

[3] 304 F.3d 500, 503 (5th Cir. 2002).

[4] 662 F.2d 292, 304 (5th Cir. 1981); see de la Torres v. Bolger, 781 F.2d 1134, 1135 n.1 (5th Cir. 1986) (per curiam) (listing cases).

[5] See, e.g., Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003); Rivera v. Heyman, 157 F.3d 101, 104–05 (2d Cir. 1998); McGuinness v. U.S. Postal Serv., 744 F.2d 1318, 1321–22 (7th Cir. 1984).

[6] McGuinness, 744 F.2d at 1321.

[7] Two questions were submitted to the jury. The first asked, "Do you find from a preponderance of the evidence that Pinkerton was a 'qualified individual' as defined in the instructions above?" The jury answered yes. The second question, which the jury answered

Pinkerton contends that the "sole cause" language is an incorrect statement of the law and that § 501 of the Rehabilitation Act instead incorporates the "mixed-motive" causation standard that he says applies under the Americans with Disabilities Act ("ADA"). DOE responds that § 501 uses the same standard as § 504 of the Rehabilitation Act (29 U.S.C. § 794), where "[l]iability can only be found when the discrimination was 'solely by reason of her or his disability,' not when it is simply a 'motivating factor.'"[8] To determine the correct causation standard under § 501, we will first determine whether the § 501 causation standard and the ADA standard are the same. Because we hold that they are equivalent, in the next section we will examine whether the ADA causation standard is the "motivating factor" standard.

Under § 504, the causation standard is settled. Although Congress instructed in § 504(d) that ADA standards be used in determining whether § 504 has been violated (29 U.S.C. § 794(d)),[9] the Soledad court held that the explicit "solely by reason of" language of § 504(a) (29 U.S.C. § 794(a))[10] is the correct standard for determining whether a violation of the provision has occurred. The court held that the language of § 504(a) trumped the language of § 504(d) because "the more specific provision within a statute prevails."[11] In Soledad, the verdict was set aside because the jury had been asked if the disability was a

---

in the negative, was, "Do you find from a preponderance of the evidence that the DOE terminated Pinkerton solely because of his disability?" (emphasis added).

[8] Soledad, 304 F.3d at 505.

[9] "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act . . . ." 29 U.S.C. § 794(d).

[10] "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . ." 29 U.S.C. § 794(a).

[11] Soledad, 304 F.3d at 505.

4

"motivating factor" of the defendant's treatment and whether the discrimination was "because of" his disability.[12]

Section 501 does not contain language overriding the ADA standards. Nevertheless, some district courts have applied § 504's stringent causation standard to § 501 cases without comment, citing to cases brought under § 504.[13] Other courts have used less stringent causation standards.[14] In other cases, courts have passed by the § 501 causation question, noting the lack of a clear answer in the statute.[15]

We begin our analysis with the statute's language. Congress's inclusion of § 501(g), which explicitly incorporates the use of ADA standards "to determine whether this section has been violated" (29 U.S.C. § 791(g)),[16] means that, under a plain reading of the statute, the ADA causation standard incorporated by § 501(g) governs claims brought under § 501.

---

[12] Id. at 503–05.

[13] See, e.g., Joachim v. Babbit, 60 F. Supp. 2d 581, 585 (M.D. La. 1999); Dowden v. Tisch, 729 F. Supp. 1137, 1138 (E.D. Tex. 1989).

[14] Sutton v. Lader, 185 F.3d 1203, 1207–08 (11th Cir. 1999) (stating that a § 501 plaintiff must show that "he was subjected to unlawful discrimination as a result of his disability . . . . The standard for determining liability under the Rehabilitation Act is the same as that under the ADA."); Burciaga v. West, 996 F. Supp. 628, 640 (W.D. Tex. 1998) (amending a memorandum opinion to read that the § 501 plaintiff must prove that he "was discriminated against because of the handicap").

[15] See Williams v. Widnall, 79 F.3d 1003, 1005 n.4 (10th Cir. 1996) ("As establishment of element (3), i.e. whether a § 501 plaintiff must show that his disability was the cause or a cause of termination is not necessary to the resolution of this case, we leave that issue to another day."); Leary v. Dalton, 58 F.3d 748, 752 (1st Cir. 1995) ("Not only is it unclear whether the right of action under § 504 overlaps with that in § 501, it is also unclear, in light of recent amendments to the Rehabilitation Act, whether the two sections require the same showing of causation."); Florence v. Runyon, 990 F. Supp. 485, 491 (N.D. Tex. 1997) ("In short, it is not entirely clear whether § 504's causation standard applies to § 501 cases.").

[16] "The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act . . . ." 29 U.S.C. § 791(g).

A causation standard for § 501 that aligns with the ADA standard is consistent with the history of the statute. Section 501 of the Rehabilitation Act of 1973 applies to federal government departments and agencies.[17] By contrast, the ADA, enacted in 1990, explicitly excludes the federal government from coverage.[18] Subsequently, the 1992 amendments to the Rehabilitation Act, which included the addition of § 501(g), were intended to make the Rehabilitation Act more consistent with the ADA and to grant protections in line with the protections provided to ADA-covered employees.[19] It is consistent with this statutory history that the federal government intends courts to apply the identical causation standard to claims brought by its own employees and plaintiffs suing under the ADA.

The conclusion that the ADA causation standard should be applied to § 501 claims is further supported by the fact that Equal Employment Opportunity Commission ("EEOC") regulations implementing § 501 have incorporated ADA standards, including the level of causation required for findings of a violation. The regulations provide that the "standards used to determine whether section 501 . . . has been violated in a complaint alleging nonaffirmative action employment discrimination under this part shall be the standards applied under . . . the Americans with Disabilities Act of 1990 . . . ."[20]

Applying different causation standards to claims brought under § 501 and § 504 is consistent with how Congress distinguishes between § 501 and § 504 in the statutory scheme. Under § 794a(a)(1), the "remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964" govern complaints under

---

[17] 29 U.S.C. § 791.

[18] 42 U.S.C. § 12111(5)(B); see Hendrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003).

[19] Schrader v. Ray, 296 F.3d 968, 973–74 (10th Cir. 2002).

[20] 29 C.F.R. § 1614.203(b).

§ 501.[21] By contrast, the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" apply to § 504 claims.[22]

The Supreme Court has further distinguished between § 501 and § 504 with regard to remedies. The Court has held that Congress waived the government's sovereign immunity from monetary remedies for claims brought under § 501, while immunity is not waived for § 504 claims. Lane v. Pena.[23] Thus, plaintiffs may bring discrimination claims under § 501 and § 504, but recover monetary relief only under § 501.

## 2. The ADA's Standard of Causation

The causation question under the ADA is really a question of whether "the ADA's use of the causal language 'because of,'[24] 'by reason of,'[25] and 'because'[26] means that discriminatory and retaliatory conduct is proscribed only if it was solely because of, solely by reason of, or solely because an employee was disabled

---

[21] 29 U.S.C. § 794a(a)(1).

[22] 29 U.S.C. § 794a(a)(2).

[23] 518 U.S. 187, 193–94, 116 S. Ct. 2092, 2097 (1996).

[24] 42 U.S.C. § 12112(a). Title I of the ADA states that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Id. (emphasis added).

[25] 42 U.S.C. § 12132. Title II of the ADA states that: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id. (emphasis added).

[26] 42 U.S.C. § 12203(a). Title IV of the ADA states that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Id. (emphasis added).

or requested an accommodation." Head v. Glacier Nw., Inc.[27] The answer to this question is unsettled in the Fifth Circuit. Some circuit decisions in the 1990s endorsed, without explaining the reasons, the "sole causation" standard.[28] Other circuit decisions have approved the "motivating factor" causation test for ADA claims.[29]

Seven of our sister circuits have held that the ADA causation standard does not require a showing of sole cause.[30] The Ninth Circuit in Head v. Glacier Nw. Inc. and the Eleventh Circuit in McNely v. Ocala Star-Banner Corp., thoroughly analyzed this question. The McNely court concluded after analyzing the statutory language, the legislative history, and the Supreme Court precedent interpreting "because of" in Title VII cases, that the "sole cause" standard was

---

[27] 413 F.3d 1053, 1063–64 (9th Cir. 2005).

[28] See, e.g., Still v. Freeport-McMoran, Inc., 120 F.3d 50, 51–52 (5th Cir. 1997) (per curiam); Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam); Rizzo v. Children's World Learning Ctrs., Inc., 84 F.3d 758, 763–65 (5th Cir. 1996).

[29] Soledad v. U.S. Dept. of Treasury, 304 F.3d 500, 503–04 (5th Cir. 2002) (citing Ahrens v. Perot Sys. Corp., 205 F.3d 831, 835 (5th Cir. 2000) for the proposition that to succeed in an ADA claim "discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome"); Newberry v. E. Texas State Univ., 161 F.3d 276, 279 (5th Cir. 1998) (citing Hypes v. First Commerce Corp., 134 F.3d 721, 726 (5th Cir. 1998) for the proposition that an ADA plaintiff must show that his disability was a "motivating factor" in the decision to take an adverse employment action); Buchanan v. City of San Antonio, 85 F.3d 196, 200 (5th Cir. 1996). These cases did not explicitly address if they were rejecting the "sole cause" test discussed in other Fifth Circuit decisions. Recent cases have noted that the Fifth Circuit has announced two different causation standards for ADA cases without saying which one is controlling law in the circuit. See, e.g., Orr v. Echosphere, L.L.C., No. Civ. A. 3:05CV1440B, 2006 WL 435125, at *2 (N.D. Tex. Feb. 23, 2006).

[30] Head, 413 F.3d at 1063–65; Parker v. Columbia Pictures Indus., 204 F.3d 326, 337 (2d Cir. 2000); Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999); Foster v. Arthur Anderson, LLP, 168 F.3d 1029, 1033–34 (7th Cir. 1999); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1076 (11th Cir. 1996); Katz v. City Metal Co., Inc., 87 F.3d 26, 33 (1st Cir. 1996); Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir. 1995). But see Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 454 (6th Cir. 2004) (holding that, despite contrary law in other circuits, in the Sixth Circuit an ADA plaintiff must show that her disability was the "sole reason" for the employer's adverse employment action).

misplaced in ADA cases.[31] The court thought it inappropriate to import the "solely" restriction from § 504 of the Rehabilitation Act, when a plain reading of the "because of" causation language in the ADA "conveys the idea of a factor that made a difference in the outcome," not one that was necessarily the "sole cause" of the outcome.[32]

Under a plain reading of the statute, and in accord with the position of other circuits, we conclude that the "sole causation" standard is not the appropriate standard for ADA claims. We hold that under a straightforward reading of the statute, the "motivating factor" test should be applied to ADA claims. This is consistent with the law of most other circuits,[33] and it is in line with the causation standard we have applied to similar anti-discrimination statutes.

The "because of," "by reason of," and "because" language in the ADA statute means that Congress intended the ADA to "cover situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action."[34] Similar language is used under Title VII, which prohibits employers from discriminating "because of" any protected characteristic, including "race, color, religion, sex, or national origin."[35] The Civil Rights Act of 1991 clarified Title VII by imposing liability on employers

---

[31] 99 F.3d at 1073–76.

[32] Id. at 1073–74, 1077.

[33] Head, 413 F.3d at 1065; Parker, 204 F.3d at 337; Baird, 192 F.3d at 470; Foster, 168 F.3d at 1033; Katz, 87 F.3d at 33; Pedigo, 60 F.3d at 1301. In McNely, the Eleventh Circuit said that the ADA "imposes liability whenever the prohibited motivation [for the adverse employment action] makes the difference in the employer's decision, i.e., when it is a 'but-for' cause." 99 F.3d at 1068.

[34] Parker, 204 F.3d at 337.

[35] 42 U.S.C. § 2000e-2(a)(1).

where discrimination "was a motivating factor for any employment practice, even though other factors also motivated the practice."[36]

The Second Circuit reasoned persuasively in Parker that although the 1991 Civil Rights Act "does not, by its own terms, apply to violations of the ADA, nothing in either the language or purpose of either statute suggests that Congress intended different causation standards to apply to the different forms of discrimination."[37] In fact, use of the nearly identical causal language in Title VII and the ADA "indicates that the expansion of Title VII to cover mixed-motive cases should apply to the ADA as well."[38] Significantly, we have held that the identical "because of" causal language in the Age Discrimination in Employment Act ("ADEA") mandates application of the "mixed-motive" analysis to ADEA cases. Rachid v. Jack In The Box, Inc.[39] In line with these cases, we hold that to establish liability in an employment discrimination action under the ADA, the plaintiff must show that disability played a motivating role in the adverse employment action. Because the ADA standard applies in § 501 cases, the "motivating factor" test is applicable here. It was not used in the jury charge below, therefore we must reverse.

---

[36] 42 U.S.C. § 2000e-2(m); see Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148 (2003) (applying the mixed-motive framework in a recent Title VII case).

[37] 204 F.3d at 337.

[38] Id.

[39] 376 F.3d 305, 310–12 (5th Cir. 2004); see Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 334 (5th Cir. 2005) (holding that the mixed-motive framework is applicable to Family Medical Leave Act ("FMLA") retaliation claims, despite the fact that the FMLA statute does not contain the words "because of" when describing the discrimination that it proscribes, because the "text undeniably" means to "prohibit[] discrimination because of the exercise of FMLA rights," the regulations promulgated under the FMLA "clearly anticipate mixed-motive cases," and because the adoption of a mixed-motive framework maintains consistency with the ADEA and Title VII mixed-motive framework).

## III. The Exclusion of Evidence

Pinkerton sought to admit into evidence multiple documents and testimony concerning investigative reports of the Dallas OCR office. The district court admitted portions of Mark Levesque's testimony about his investigation, including his personal observations and what Levesque was told about retaliatory practices, but excluded other portions of his testimony and parts of his written notes and summaries.

It is not necessary to rule on the admissibility of the Levesque documents and testimony because the same issues may not be presented on retrial and the issues were not fully developed in the appellate briefs.

## IV. Conclusion

The judgment is REVERSED and the cause is REMANDED.