KAREN NELSON MOORE, Circuit Judge,
dissenting.
Because I believe that there is a genuine issue of material fact with respect to whether Wittich knew that Everson’s conduct was related to his disability, I respectfully dissent. I would reverse the district judge’s grant of summary judgment in favor of Wittich and allow Everson to proceed on his claim, under Title II of the Americans with Disabilities Act (“ADA”), that Wittich discriminated against him in arresting and charging him with assault and disorderly conduct. I write separately also to highlight the tension of this circuit’s “solely because of’ standard for intentional discrimination with the majority of our sister circuits.
*780 1. WRONGFUL-ARREST THEORY AS A METHOD OF PROOF FOR INTENTIONAL DISCRIMINATION
I believe that Everson has demonstrated a claim under Title II of the ADA that Wittich intentionally discriminated against him because of his disability when Wittich arrested him and charged him with assault and disorderly conduct. Everson alleges his claim under the “wrongful-arrest theory,” typically attributed to the case Lewis v. Truitt, 960 F.Supp. 175 (D.Ind.1997). Under this theory, a plaintiff must show that “(1) he was disabled, (2) the defendants knew or should have known he was disabled, and (8) the defendants arrested him because of legal conduct related to his disability.” Id. at 178. This test is “a specific application of the general standard.” Gohier v. Enright, 186 F.3d 1216, 1220 (10th Cir.1999) (discussing the wrongful-arrest theory but concluding that it was not applicable to the facts of that case because the defendant officer did not arrest the disabled decedent but rather used force on him while he was committing an assault related to his disability).
Here, it is undisputed that Everson is disabled and that Wittich knew Everson had a seizure-related medical condition. With respect to the third element, however, Wittich argues that to show that he discriminated against Everson because of his disability[2] — i.e., to show intentional discrimination — Everson must show that Wittich knew Everson’s conduct was related to his disability. In other words, Wittich argues that under a modified wrongful-arrest theory for intentional discrimination, the third element requires the plaintiff to show that the defendant arrested him because of legal conduct that the defendant knows is related to the plaintiffs disability.[3]
*781 The majority concludes that there is “insufficient” evidence that Wittich knew that Everson’s actions were related to his medical condition. Majority Op. at 778. However, Everson can prove that Wittich had the requisite knowledge through circumstantial evidence, and Wittich’s subjective knowledge is a question of fact for the jury. Cf. Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (concluding that, in the context of the Eighth Amendment deliberate-indifference standard, “[wjhether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence”). Viewing the facts in the light most favorable to Everson, I think that Everson does present circumstantial evidence from which a reasonable jury could conclude that Wittich knew Everson’s conduct was related to his seizure. Thus, there is a genuine issue of material fact remaining, and summary judgment is inappropriate.
To start, Wittich admits that he was responding to a call requesting that he help a person at the mall having a seizure; the dispatch call did not indicate that a crime or disturbance was occurring. R.51 (Wittich Dep. at 59-60); R.21-8 (Wittich Aff. at 1). Wittich also admits that, after he arrived on the scene but before anyone attempted to restrain Everson, he heard Everson say, “If you all didn’t get away, I will have another seizure and start punching you guys.” R. 51 (Wittich Dep. at 103). The majority concludes that this statement, “in the best light for Everson, put Wittich on notice that Everson was prone to having another seizure.” Majority Op. at 775. But the majority ignores the second clause of Everson’s statement: “I will have another seizure and start punching you guys.” In the light most favorable for Everson, the statement put Wittich on notice not only that Everson was prone to having another seizure but also that the seizures come with punches— i.e., that his seizures are related to his violent behavior.
*782 Furthermore, a prior panel of this court concluded that
[vjiewed in the light best to Everson, he had recovered from his seizure when he arrived at the squad car. There is nothing in the record to suggest that he was physically or verbally abusive at that time. Deputy Sheriff Wittich knew that Everson had suffered an epileptic seizure. It is a fair inference, then, that the deputy should have known that Ev-erson’s actions were made with, at best, a semi-conscious frame of mind.
Everson v. Leis, 556 F.3d 484, 499-500 (6th Cir.2009); see R.20 (Everson Dep. at 27) (indicating that Everson came out of the seizure “[w]hen [he] was on the bed, basically when they were rolling [him] out”). To be sure, that Wittich should have known that Everson’s conduct was not purposeful does not prove conclusively that Wittich did in fact know. But an inference can be drawn from the fact that he should have known, and that inference is circumstantial evidence of Wittich’s actual knowledge. Cf. Farmer, 511 U.S. at 842-43 & n. 8, 114 S.Ct. 1970 (“[A] factfin-der may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious.”; “[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of.” (alterations in original) (internal quotation marks omitted)).
The majority may be correct that the evidence in Wittich’s favor — i.e., Wittich’s testimony that, after Everson was restrained, Wittich asked an EMS paramedic whether Everson’s conduct was related to the seizures and the paramedic told Wit-tich no, R.51 (Wittich Dep. at 42-43, 83-84) — is “strong[er].” Majority Op. at 778. But “[w]hen reviewing a district court’s grant of summary judgment, [we] may not determine the credibility of witnesses or weigh the evidence.”[4] Reeves v. Swift Transp. Co., 446 F.3d 637, 640 (6th Cir.2006). I believe that, viewing the evidence in the light most favorable to Everson, he has alleged circumstantial evidence that Wittich knew Everson’s conduct was related to his medical condition. Therefore, I believe that there is a genuine issue of material fact with respect to whether Wit-tich intentionally discriminated against Ev-erson when arresting him.
For the same reasons, I believe that there is also a disputed issue of material fact with respect to whether Wittich discriminated against Everson when charging him with assault and disorderly conduct. I also note that, at the summary judgment stage, we must accept as true “Everson’s assertion that he heard an officer state that he will ‘think ... up [a charge] and fax it down,’ ” Majority Op. at 779 (quoting R. 20 (Everson Dep. at 28)), and we must construe the statement in Everson’s favor. Instead, the majority conjectures what the statement “appears to indicate” from the perspective of Wittich. Majority Op. at 779. In the best light to Everson, this statement raises an inference that the officer who made the statement knew that he had no basis to suspect that Everson had committed a crime, and that inference is circumstantial evidence that supports a claim of intentional discrimination.
Accordingly, I would reverse the district court’s grant of summary judgment in fa *783 vor of Wittieh on Everson’s discrimination claim with respect to Wittieh arresting and charging him with assault and disorderly conduct.
II. INTENTIONAL DISCRIMINATION IN ON-THE-SCENE SITUATIONS
I agree with the majority that Everson has not established a claim that Wittieh intentionally discriminated against him by approaching and restraining him. I would not extend the above-discussed indirect method of proof for demonstrating intentional discrimination with respect to arrests and filing charges to an officer’s on-the-scene decisions in unexpected or exigent circumstances. See Gohier, 186 F.3d at 1217-18 (explaining why the wrongful-arrest theory would not apply when an officer uses force in response to threatening conduct, even if the conduct is related to the individual’s disability). Whereas an officer’s decision to arrest and charge an individual is focused on the individual’s conduct and its lawfulness, an officer’s decisions in on-the-scene situations involve broader concerns, including officer and public safety. See Thompson v. Williamson Cnty., 219 F.3d 555, 558 (6th Cir.2000) (concluding that “if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled”). Because of these additional considerations in an officer’s on-the-scene decisions, the modified wrongful-arrest method of proof explained above is not sufficient to raise an inference of intentional discrimination from the fact that the officer knew the individual’s actions were related to his disability. Therefore, I agree that Everson has not demonstrated that Wittieh intentionally discriminated against him in approaching and restraining him.
I do not agree, however, with the majority’s assertions that Wittich’s actions in approaching and restraining Everson were necessarily compelled by the situation.[5] Majority Op. at 777 (“Wittieh was expected to respond to this situation by securing the scene, which he did by restraining Ever-son.”), 11 (“Everson’s outward conduct required that Wittieh restrain him.”). Whereas restraining someone engaging in conduct similar to Everson’s may be the appropriate response generally, there is evidence in the record indicating that officers should not approach or attempt to restrain a person having an epileptic attack. R. 51-1 (Epilepsy Foundation Doc.); R. 51-2 (Ohio Rev.Code Ann. § 2305.43). What law-enforcement procedures or practices were “required” in response to Ever-son’s conduct or “expected” of Wittieh in the situation may be relevant to a failure-to-accommodate claim, which Everson does not develop in this case.[6] What matters for Everson’s claim of intentional discrimi *784 nation is Wittich’s statement that he believed Everson’s conduct was threatening his safety and the safety of others, and Everson’s failure to provide any evidence, direct or circumstantial, to discredit Wit-tich or otherwise suggest that Wittich acted because of Everson’s disability.
III. THE “SOLELY BECAUSE OF” STANDARD FOR INTENTIONAL DISCRIMINATION
I am also compelled to highlight at this time how this court’s “solely because of’ standard for plaintiffs to prove a prima facie case of intentional discrimination under Title II of the ADA conflicts with the majority of our sister circuits. Although I agree with the majority that the “solely” standard is not dispositive in this case, I think that our divergence from the majority of circuits on this standard is an issue that our en banc court should consider in an appropriate case.
The text of Title II states that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132 (emphasis added). Our sister circuits have tracked this language when setting forth the elements of a prima facie case. Bowers v. Nat’l Collegiate Athletic Ass’n, 475 F.3d 524, 553 n. 32 (3d Cir.2007) (“by reason of his disability”); Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir.2007) (“by reason of the plaintiffs disability”); Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir.2006) (“by reason of the plaintiffs disability” (internal quotation marks omitted)); Rodde v. Bonta, 357 F.3d 988, 995 (9th Cir.2004) (“by reason of his disability” (internal quotation marks omitted)); Henrietta D., 331 F.3d at 272 (“by reason of plaintiffs’ disabilities”); Gohier, 186 F.3d at 1219 (“by reason of the plaintiffs disability” (internal quotation marks omitted)); Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir.1999) (“based upon disability”); Lightbourn v. Cnty. of El Paso, 118 F.3d 421, 428 (5th Cir.1997) (“by reason of their disability”), cert. denied, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998).
But the Fourth Circuit, in a decision on which this court relied in Jones v. City of Monroe, 341 F.3d 474, 477 (6th Cir.2003), has stated that a Title II plaintiff must establish that the discrimination was “solely on the basis of the disability.” Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir.1995). In both Jones and Doe, the plaintiffs brought claims under Title II of the ADA and under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the courts applied the sole-motivation standard to both claims. Jones, 341 F.3d at 477 & n. 3; Doe, 50 F.3d at 1264-65 & n. 9. The text of the Rehabilitation Act, however, includes the word “solely,” whereas the ADA does not. Compare 29 U.S.C. § 794(a) (“No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination ....” (emphasis added)), with 42 U.S.C. § 12132 (“[N]o qualified individual with a disability shall, by reason of such disability, ... be subjected to discrimination....”). Prior to *785 Jones, this court recognized that, although we frequently apply the same analysis to claims under both statutes, this textual difference may be an instance in which the analyses diverge. McPherson v. Mich. High Sch. Athletic Ass’n, Inc., 119 F.3d 453, 460 (6th Cir.1997) (en banc); see also McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1073-77 (11th Cir.1996) (analyzing the statutory language, legislative history, and case law to conclude that it is improper to import “solely” from the Rehabilitation Act into the ADA).
But in Jones, we summarily concluded that “[fjor purposes of [that] case, there are no relevant differences between Title II of the ADA and Section 504 of the Rehabilitation Act,” 341 F.3d at 477 n. 3, and for the first time imported the sole-motivation standard from the Rehabilitation Act into the third element of the prima facie case for Title II ADA claims with no analysis other than citations to Kaltenberger v. Ohio Coll. of Podiatric Med., 162 F.3d 432, 435 (6th Cir.1998) (setting forth the prima facie case for a Title II ADA claim but without using the word “solely”), Burns v. City of Columbus, 91 F.3d 836, 841 (6th Cir.1996) (a Rehabilitation Act case), and Doe, 50 F.3d 1261.[7] Jones, 341 F.3d at 477. Although elsewhere in the Jones opinion we describe the third element without the word “solely”— “whether [the plaintiff] was excluded from participation in or denied a benefit on the basis of her disability,” id. at 477 n. 4 (quoting Henrietta D., 331 F.3d at 276-78) — the sole-motivation standard has become firmly entrenched in this court’s binding Title II precedent.[8] See Tucker v. *786 Tennessee, 539 F.3d 526, 532 (6th Cir.2008), cert. denied, — U.S. -, 130 S.Ct. 60, 175 L.Ed.2d 24 (2009); Dillery v. City of Sandusky, 398 F.3d 562, 567 (6th Cir.2005) (quoting Jones, 341 F.3d at 477).
Because our “solely because of’ standard is in tension with the majority of circuits, I believe that our en banc court should consider the continued validity of our decisions applying this standard in an appropriate case.
IV. CONCLUSION
I respectfully dissent and would reverse the district judge’s grant of summary judgment in favor of Wittich with respect to Everson’s claim that Wittich intentionally discriminated against him by arresting and charging him with assault and disorderly conduct for involuntary conduct caused by his disability. Because I believe that a genuine issue of material fact remains with respect to whether Wittich knew that Everson’s conduct was related to his disability, I would allow Everson to proceed on his ADA claim against Wittich.

. In his brief, Wittich argues that Everson was not arrested because of his disability but rather because he "was engaged in objectively verifiable misconduct.” Appellee Br. at 8. Wittich further argues that the question of whether he violated the ADA hinges on whether he violated the constitutional protections for wrongful arrest. Id. at 16 ("[Ever-son's] actions clearly constituted probable cause that he had violated both statutes [for which he was arrested] and his arrest was therefore completed with probable cause. There was no constitutional violation by Deputy Wittich in effecting the arrest of Everson, and therefore no violation of the ADA.”).
For his arguments, Wittich relies on the Fourth Circuit’s decision in Bates ex rel. Johns v. Chesterfield County, Virginia, 216 F.3d 367 (4th Cir.2000). In that case, officers were responding to a 911 call regarding a "suspicious suspect” and encountered an autistic teenager who became physically confrontational. Id. at 371. The officers did not know the teenager was autistic when the incident first escalated but were informed of his disability during the course of the incident. Despite knowing of the teenager's autism, the officers decided to charge him with assault. The Fourth Circuit conducted little analysis with respect to the plaintiff's ADA claim, relying instead on its analysis of the plaintiff's Fourth Amendment claim. Id. at 368 ("And as the officers complied with the Fourth Amendment in all respects, we are unable to discern any discrimination on account of disability.”). Specifically, the court concluded that "Bates was not arrested because of his disability” but rather "because there was probable cause to believe that he assaulted a police officer” — in other words, "because of [his] objectively verifiable misconduct.” Id. at 373.
I do not agree with the Fourth Circuit’s view that the analysis of an ADA discrimination claim simply relies on a Fourth Amendment reasonableness analysis. At oral argument, when asked what would be intentional discrimination given that the officer could always rely on the involuntary actions caused by an epileptic seizure to say that he relied on "objectively verifiable misconduct,” counsel for Wittich responded that an officer would have to know of the individual’s disability and know that the individual’s conduct was related to the disability.

. By modifying the third element to require that the officer know that the person’s conduct is related to his disability, the theory would not cover plaintiffs in the scenario contemplated by the Lewis court in setting forth *781 the wrongful-arrest theory and first expressed by the House Judiciary Committee when considering the ADA:
“In order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid of seizures. Such discriminatory treatment based on disability can be avoided by proper training.”
Lewis, 960 F.Supp. at 178 (quoting H.R. Rep. No. 101-485, pt. III, 101st Cong., 2d Sess. 50, reprinted in 1990 U.S.C.C.A.N. 473). The wrongful-arrest theory from Lewis contemplates an ADA violation when law-enforcement officers "misperceive [ ] the effects of a disability as illegal conduct.” Gohier, 186 F.3d at 1221 (emphasis added). We require, however, the plaintiff to "show that the discrimination was intentionally directed toward him or her in particular.” Tucker v. Tennessee, 539 F.3d 526, 532 (6th Cir.2008), cert. denied, - U.S. -, 130 S.Ct. 60, 175 L.Ed.2d 24 (2009). The wrongful-arrest theory nevertheless could be used as an indirect method of proof to show intentional discrimination if the plaintiff proved that the officer knew or should have known that the plaintiff's conduct is related to the disability.
I note also that we have stated that the failure to train officers on how to comply with the ADA is not intentional discrimination. Dillery v. City of Sandusky, 398 F.3d 562, 568 (6th Cir.2005). Indeed, Wittich benefits in this case from his lack of training in how to recognize and handle situations involving a person having an epileptic seizure. Majority Op. at 778. Although some courts have applied a "reasonable-accommodation-during-arrest theory,” Everson has not developed a failure-to-accommodate argument in this case. See Gohier, 186 F.3d at 1222 (recognizing theory but declining to decide whether it would apply to the facts of that case because the plaintiff did not pursue the theory on appeal).

. For example, at oral argument, counsel for Everson raised the fact that evidence of the Wittich's conversation with the paramedic was first brought to light at Wittich’s deposition; the conversation was not included in either the paramedic’s affidavit or Wittich’s charging documents. Such arguments regarding the credibility of Wittich's testimony are appropriate for the factfinder to consider.

. The majority also includes a short discussion of the reasonableness of the force that Wittieh used while restraining and arresting Everson. Majority Op. at 777. This court previously dismissed Everson's excessive-force claim, Everson, 556 F.3d at 497-98, and, as I explained above, I believe that whether Wittieh discriminated against Everson under the ADA is a separate question from whether Wittieh acted reasonably under the Fourth Amendment.

. This court has not explicitly decided whether a reasonable-accommodation claim under Title II is a viable claim separate from a disparate-treatment or disparate-impact type claim. See Tucker, 539 F.3d at 532-33, 535 (contemplating the accommodation requirement within the framework of an intentional discrimination claim but also stating the plaintiff must show intentional discrimination or failure to accommodate effectively); Dillery, 398 F.3d at 568 (recognizing that the plaintiff made a reasonable-accommodation argument but providing no further accommodation analysis); Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 904 n. 4 (6th Cir.2004) (questioning, without deciding, whether it was appropriate to characterize a failure-to-accommodate claim as a form of *784 disparate-impact discrimination); Jones v. City of Monroe, 341 F.3d 474, 480 (6th Cir.2003) (construing the plaintiff’s argument to be relating to reasonable accommodation but not discussing the relationship of a reasonable-accommodation claim to an intentional-discrimination claim). But see Wis. Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 751 (7th Cir.2006) (en banc) (distinguishing the failure to accommodate as an independent claim from disparate-treatment claims); Henrietta D. v. Bloomberg, 331 F.3d 261, 275 (2d Cir.2003) (collecting cases for the same), cert. denied, 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004).

. Jones was not the first time that we summarily imported the sole-motivation standard from the Rehabilitation Act into the ADA. In Maddox v. University of Tennessee, 62 F.3d 843, 846 & n. 2 (6th Cir.1995), we added the Rehabilitation Act’s "solely” language to the "because of” standard under Title I of the ADA. We have since recognized that our sole-motivation standard in the Title I area is in tension with the majority of our sister circuits. Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 363-64 n. 2 (6th Cir.) (collecting cases from other circuits), cert. denied, 552 U.S. 826, 128 S.Ct. 201, 169 L.Ed.2d 37 (2007); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 454 (6th Cir.2004) (recognizing that the sole-motivation standard is still the law of this circuit, even though it is in tension with other circuits); see also Pinkerton v. Spellings, 529 F.3d 513, 518 & n. 30 (5th Cir.2008) (collecting cases reaching "the conclusion that the ADA causation standard does not require a showing of sole cause” but noting that our court has concluded otherwise). But see Todd v. City of Cincinnati, 436 F.3d 635, 637-38 (6th Cir.2006) (discussing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173 (6th Cir.1996), and attempting to limit application of the sole-motivation standard).

. Some circuits have interpreted the "by reason of” language of Title II to establish a "motiving factor” standard. See, e.g., Head v. Glacier Nw., Inc., 413 F.3d 1053, 1065-66 (9th Cir.2005); Tsombanidis v. W. Haven Fire Dep’t, 352 F.3d 565, 579 (2d Cir.2003); cf. Macy, 484 F.3d at 363-64 n. 2 (noting cases from other circuits that apply a "motivating factor” standard to claims under Title I of the ADA). It is unclear whether a mixed-motive standard is proper under the ADA in light of the Supreme Court’s decision in Gross v. FBL Financial Services, Inc., - U.S. -, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009), which held that mixed-motive analysis does not apply in the context of the Age Discrimination in Employment Act of 1967 ("ADEA”). See Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961-62 (7th Cir.2010) (extending Gross to the ADA); see also Bolmer v. Oliveira, 594 F.3d 134, 148 (2d Cir.2010) (recognizing open question regarding Gross’s extension to ADA claims); Crouch v. J C Penney Corp., 337 Fed.Appx. 399, 402 n. 1 (5th Cir.2009) (unpublished decision) (same). Regardless, even the "but-for” causal standard does not require disability to be the sole motivating factor. See Goostree v. Tennessee, 796 F.2d 854, 863 (6th Cir.1986) (distinguishing sole-motivation standard from “but for” standard) (quoting McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)), cert. denied, 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987); see also Jones v. Okla. City Pub. Schs., *786 617 F.3d 1273, 1277-78 (10th Cir.2010) (same); cf. Gross, 129 S.Ct. at 2350 (describing a "but-for” cause as one that "had a determinative influence on the outcome” (emphasis and internal quotation marks omitted)).