**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 5, 2012

Lyle W. Cayce
Clerk

No. 12-30222

EARNEST HAMMOND, JR.,

Plaintiff - Appellant

v.

JACOBS FIELD SERVICES,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-56

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

PER CURIAM:[*]

In this case, we are asked to decide whether Defendant-Appellee Jacobs Field Services North America was entitled to summary judgment on Plaintiff-Appellant Earnest Hammond, Jr.'s claims for discrimination based on his race and disability in violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964, and for retaliation. The district court granted summary judgment for Jacobs Field Services. We affirm with respect to the discrimination claims, but reverse and remand as to the retaliation claim.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30222

## I. FACTS AND PROCEDURAL HISTORY

Jacobs Field Services North America ("Jacobs") performs general construction and construction-related services, industrial maintenance, and plant operations for chemical and refining companies throughout the Gulf Coast region. Earnest Hammond, Jr. ("Hammond") was first employed by Jacobs in 1996. After a gap in employment, he returned to work for Jacobs in 1998 at the Exxon Lube facility in Port Allen. The Exxon Lube facility packages motor oil, and employees in this facility work in shifts and rotate among the various types of automated lines which package the oil. As an operator, Hammond worked on the high-speed gallon line most often. His job duties involved climbing, balancing, stooping, kneeling, pulling, pushing, lifting, grasping, and using tools.

For security purposes, the Exxon facility where Hammond worked required employees to use a gate pass assigned to each employee which is scanned to gain entry into the plant. This procedure is a safety measure which ensures that only authorized personnel have access to the facility and also allows Exxon to know how many people are in the facility in the event of an emergency. If an employee's badge is not used for an extended period of time, it is deactivated. It is against the rules of both Exxon and Jacobs for an employee to enter the facility on someone else's pass. This rule was discussed at a safety meeting which Hammond attended during his employment.

In the year leading up to his termination in March 2008, Hammond had experienced health problems, including carpal tunnel syndrome, neck pain, back pain and weakness in the legs. In February 2008, after an extended sick leave, Hammond attempted to return to work with a limited duty release. Jacobs Superintendent Brent Watts informed Hammond that no limited or light duty work was available at that time and he could not return to work until he obtained a full medical release. On February 29, 2008, Hammond returned and attempted to enter the plant but his deactivated badge would not allow him

2

No. 12-30222

entry. Rather than use the intercom to communicate with security, Hammond followed another vehicle into the plant. Hammond knew that this practice was against company policy.[1]

On March 3, 2008, Hammond discussed this incident with Brent Watts and Jacobs employees Wayne Tyson and Darryl Fuentes. During this meeting, Hammond admitted that he entered the plant on someone else's badge and acknowledged that he knew this was against both Exxon's and Jacobs's rules. His only excuse for violating the rules was that he wanted to discuss his returning to work with someone. Based on this security breach, Jacobs Project Manager Wayne Tyson terminated Hammond. This decision was later affirmed by McClelland, who told Tyson that even if Jacobs had not terminated Hammond, Exxon would have refused to allow Hammond entrance to the facility.

At the time of his termination, Jacobs contends that Hammond could not perform any of his job duties, let alone the essential ones. The record reflects that Hammond has worked for other employers only for a few months since he was terminated. Since his termination, Hammond has received disability benefits, and Hammond began to receive Social Security disability benefits in February 2010.

On May 22, 2008, Hammond filed a charge of discrimination with the EEOC, which issued a Notice of Right-to-Sue in October 2009. In January 2010, Hammond sued Jacobs in the Middle District of Louisiana for discrimination

---

[1] There is some dispute as to the events that followed on February 29, 2008. Jacobs insists that, after entering the plant, Hammond went to see Watts and was told to leave the plant because his presence was unauthorized. Jacobs further claims that Hammond ignored this directive and attempted to see the Exxon plant manager Mark McClelland. Finally, Jacobs asserts that when Hammond could not enter the secure door to McClelland's office, he allegedly pounded on the door, resulting in McClelland's office contacting the police. Hammond alleges that these events occurred on his subsequent visit, on March 3, 2008, and also denies that he pounded on the door.

No. 12-30222

based on his disability and race in violation of the Americans with Disabilities Act ("ADA") and of Title VII of the Civil Rights Act of 1964 ("Title VII"), respectively, and for retaliation in violation of the ADA.[2] Jacobs moved for summary judgment on all of the claims and in response, Hammond filed a motion in opposition. The district court granted Jacobs's motion for summary judgment, and dismissed Hammond's federal claims with prejudice.[3]

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts and evidence in the record must be viewed in the light most favorable to the nonmovant. *Holt*, 627 F.3d at 191. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986)).

## III. DISCUSSION

A.    **Hammond's Discrimination Claims**

   1.    *ADA*

To decide whether summary judgment was appropriate on Hammond's ADA discrimination claim, we begin with the burden-shifting framework of

---

[2] In his complaint, Hammond alleged that Jacobs retaliated against him for requesting accommodation for his disability (an ADA retaliation claim), as well as for his complaints about racial discrimination by Jacobs against its employees (a Title VII retaliation claim). However, Hammond appears to have abandoned his Title VII retaliation claim in his Opposition to Jacobs's motion for summary judgment, and does not clearly indicate that he is pursuing this claim on appeal. Therefore, we review only Hammond's ADA retaliation claim.

[3] The district court dismissed Hammond's state law claims without prejudice, as it exercised its discretion under 28 U.S.C. § 1367 not to assert federal jurisdiction over them.

No. 12-30222

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). Under this framework, the plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802. If the plaintiff succeeds, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets its burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination. *Id.* at 804. A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48 (2000) (ADEA case); *see also E.E.O.C. v. Chevron*, 570 F.3d at 615 (citing *Reeves* for the proposition that *McDonnell Douglas* applies in ADA discrimination cases).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2006). To prevail on an ADA claim, a plaintiff must prove that he has a disability, that he is qualified for the job, and that he suffered an adverse employment decision because of his disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092-93 (5th Cir. 1996); *see also Pinkerton v. Spellings*, 529 F.3d 513, 517-19 (5th Cir. 2008) (clarifying the ADA's causation standard).[4] The district court found that Hammond was not disabled,[5] that he was not qualified for his position as line

---

[4] The district court incorrectly cited *Turco* for the proposition that the ADA requires sole causation. This court, in *Pinkerton*, concluded that the ADA causation standard does not require a showing of sole cause. 529 F.3d at 519.

[5] The district court was correct to cite language from the version of the ADA in effect at the time of the alleged discrimination. The ADA was amended in 2008 and the amendments took effect on January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 11-325, 122

operator, and that he did not offer any evidence that the nondiscriminatory reason Jacobs gave for the adverse employment decisions it made as to Hammond was pretextual.

We assume arguendo that Hammond was disabled.[6] As discussed below, we think there is a fact question as to whether Jacobs's proffered nondiscriminatory reason was legitimate. But we ultimately agree with the district court that summary judgment on Hammond's ADA discrimination claim was correct because Hammond was not qualified for his position.

"The term 'qualified individual with a disability' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.").

As the record reflects, a line operator is required to perform moderately heavy manual tasks that Hammond was unable to do at the time of his termination. Some of these duties are not physically intensive (e.g., cutting excess wrapping material off of pallets, and adding glue to the glue pot), and sometimes operators are tasked, along with their other responsibilities, with the duty of training other employees. There is evidence—and on appeal Hammond

---

Stat. 3553 (2008). We have previously held that these amendments are not retroactive. *See EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

[6] The district court relied on *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610 (5th Cir. 2001), in holding that Hammond is not disabled. But Hammond's physical limitations are more severe than the plaintiff's in *Dupre*. The plaintiff in *Dupre* was capable of "bending at the knees, walking a half mile, lifting up to thirty pounds, and driving a car for an hour." *Id.* at 615. By comparison, the record shows that Hammond was unable to bend, stoop, or climb, and could not walk more than one block or lift more than five pounds.

argues—that Jacobs could have retained Hammond by reassigning him exclusively to training responsibilities or light duty tasks, which at the time were distributed among all of the line operators in the plant. But this is not a "reasonable accommodation." It is well established that the ADA does not require an employer to reassign an employee where doing so would result in other employees having to work harder or longer. *See Turco*, 101 F.3d at 1094; *see also Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."). Because Hammond was not qualified for his position, and because the accommodations he sought were not reasonable under the ADA, summary judgment was appropriate on Hammond's ADA discrimination claim.

   2.    *Title VII*

The district court appears to have applied the *McDonnell Douglas* framework in ruling on Hammond's Title VII racial discrimination claim. However, "we apply the modified *McDonnell Douglas* framework in racial discrimination cases under Title VII." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). This modified framework differs from the traditional *McDonnell Douglas* framework only in the third stage of the analysis, after the plaintiff establishes a prima facie case of discrimination, and the defendant offers a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* Under the traditional framework, a plaintiff, having the burden of production shifted back to him, must show that the defendant's reason was a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. But under the modified framework,  the plaintiff in this situation is required to show either that the defendant's reason was pretextual, or that the reason, while true, was

only one of the reasons for its adverse action, and that another "motivating factor" for the action was the plaintiff's protected characteristic, *Vaughn*, 665 F.3d at 636 (citing *Rachid*, 376 F.3d at 312).

We need not venture far into our modified *McDonnell Douglas* analysis because Hammond cannot establish a prima facie case of racial discrimination. To establish a prima facie case, Hammond must show that he was qualified for his position. *McDonnell Douglas*, 411 U.S. at 802; *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 184 (5th Cir. 1999). As discussed above, Hammond was not qualified for his position. Thus, summary judgment for Jacobs was proper on Hammond's Title VII claim. *See, e.g.*, *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003) ("Employers may succeed on summary judgment by establishing that the plaintiff is not qualified for the coveted position.").

## B.    Hammond's Retaliation Claim

We evaluate Hammond's ADA retaliation claim under the *McDonnell Douglas* framework. *See Jenkins v. Cieco Power, LLC*, 487 F.3d 309, 316-17 (5th Cir. 2007) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998)). To establish a prima facie case of unlawful retaliation, Hammond must show that he was engaged in an activity protected by statute, that he was subject to an adverse employment action, and that there was a causal link between the protected act and the adverse action. *See id.* at 317 n.3; *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *Sherrod*, 132 F.3d at 1122 n.8. An adverse employment action is any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007).  A "causal link" is shown when the evidence demonstrates that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod*, 132 F.3d at 1122.

No. 12-30222

Upon his termination, Hammond suffered an adverse employment action. The record evidence indicates that Hammond also has satisfied the first and third requirements for showing a prima facie case of retaliation. Hammond appears to have engaged in protected activity under the ADA when he requested accommodation for his disability shortly before he was fired. In addition, Hammond has presented sufficient evidence to establish a causal link between his firing and his requests for accommodation.

Given that Hammond has presented sufficient evidence to establish a prima facie case for retaliation under the ADA, Jacobs is required to articulate a legitimate, nondiscriminatory reason for its decision to terminate Hammond. *McDonnell Douglas*, 411 U.S. at 802. Jacobs alleged that it fired Hammond for entering the plant by following another employee's vehicle through the security gate. Although it is true that Hammond's action violated Jacobs policy, there is evidence in the record indicating that this policy was seldom if ever enforced. Rather, the record shows that entering the plant by following another vehicle through the gate was routine and even encouraged for new employees who have yet to be issued access cards. A reasonable factfinder could conclude that Jacobs's articulated reason for the alleged retaliatory termination was pretextual. Because the evidence pertaining to Jacobs's security policy creates a genuine issue for trial, summary judgment was inappropriate as to Hammond's retaliation claim.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the grant of summary judgment with respect to Hammond's ADA and Title VII discrimination claims, but REVERSE the grant of summary judgment with respect to Hammond's ADA retaliation claim and REMAND for proceedings consistent with this opinion.